UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
STEVEN J. EPSTEIN,

                               Plaintiff,

                                                    **MEMORANDUM & ORDER**

            - against -                              19-CV-3624 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Steven J. Epstein brings this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Social Security Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings.[1] Plaintiff seeks an order remanding this matter for further administrative proceedings, and the Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I.    Procedural History

On May 12, 2016, Plaintiff filed an application for DIB, alleging disability beginning on February 5, 2016. (*See* Administrative Transcript ("Tr."),[2] Dkt. 10, at 204–05.) On August 15, 2016, Plaintiff's application was initially denied. (*Id.* at 110–21.) On August 30, 2016, Plaintiff

---

[1] Though Plaintiff has filed his motion as a motion for summary judgment, the Court construes it as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

filed a request for a hearing before an administrative law judge ("ALJ").  (*Id.* at 122–23.)  On May

22, 2018, Plaintiff appeared with counsel before ALJ Jack Russak via video-conference.  (*Id.* at

33–57.)  In a decision dated August 16, 2018, the ALJ determined that Plaintiff was not disabled

under the Social Security Act (the "Act") and was not eligible for DIB.  (*Id.* at 15–28.)  On June

6, 2019, the ALJ's decision became final when the Appeals Council of the SSA's Office of

Disability Adjudication and Review denied Plaintiff's request for review of the decision.  (*Id.* at

1–6.)  Thereafter, Plaintiff timely[3] commenced this action.

## II.    The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The claimant

bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden

in the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines

whether the claimant is currently engaged in "substantial gainful activity."   20 C.F.R.

§ 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled.  If the answer is no, the ALJ

proceeds to the second step to determine whether the claimant suffers from a severe impairment.

20 C.F.R. § 404.1520(a)(4)(ii).   An impairment is severe when it "significantly limits [the

---

[3] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42. U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on June 11, 2019, and that, because Plaintiff filed the instant action on June 20, 2019—only 9 days later—it is timely. (*See generally* Complaint, Dkt. 1.)

claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the impairment is not severe, then the claimant is not disabled.

In this case, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, lumbar spine disorder with L-4 radiculopathy, left shoulder bursitis, panic disorder, and general anxiety disorder.  (Tr. at 17 (citation omitted).)  The ALJ then progressed to the third step and determined that Plaintiff's severe impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)" (the "Listings").  (*Id.* at 17–20.)  Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[4] to perform

> light work as defined in 20 CFR 404.1567(b).  The claimant has the ability to occasionally stoop and climb ramps or stairs, but he should never crouch, kneel, crawl, or climb ladders, ropes, or scaffolds.  The claimant should also never operate foot controls with his bilateral lower extremities, and he should never push/pull with his bilateral upper extremities.  The claimant further requires the option to change positions from sitting to standing and vice-a- versa every half hour (30 minutes) but is able to remain in the workstation while changing positions.  The claimant additionally should avoid exposure to moving machinery, unprotected heights, and driving of vehicles, and the claimant should avoid concentrated exposure to extreme heat or cold, wetness or humidity, chemicals, and irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.  The claimant also should never reach overhead with his bilateral upper extremities, and the claimant would have the ability to reach frequently in all other directions with his bilateral upper extremities.  From a mental standpoint, the claimant is limited to work that involves simple, routine tasks.  The work should be in a low stress environment, which is defined as having only occasional decision making and occasional changes in the work setting.  The claimant would further be limited to work that requires only occasional use of judgment on the job, and the claimant is limited to occasional interaction with the public.

(*Id.* at 20.)  Based upon the RFC finding, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a paperhanger (*id.* at 26), but that Plaintiff was "capable of

---

[4] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

making a successful adjustment to other work that exists in significant numbers in the national economy," including the representative occupations of inspector, collator, and photo machine operator (*id.* at 27–28). The ALJ accordingly concluded that Plaintiff was not disabled. (*Id.* at 28.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, alterations, and citation omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision" (internal quotation marks and citation omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence[,]" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted),

and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld[,]" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to comply with the treating physician rule and inappropriately weighing the medical opinion evidence; (2) failing to properly develop the record regarding Plaintiff's obesity and consider its effects in his RFC determination; (3) failing to consider the side effects of Plaintiff's medications in his RFC evaluation; and (4) failing to assess Plaintiff's credibility regarding the pain he suffered as a result of the severe shoulder injury and lower back pain.  (*See* Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 13-1, at 15–24; Reply in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Reply"), Dkt. 17, at 2–5.)  For the reasons that follow, the Court remands the case due to the ALJ's failure to follow the treating physician rule and failure to properly address Plaintiff's credibility.

## I.    The Treating Physician Rule

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[5] of deference to the views of the physician who has engaged in the primary treatment of the claimant."  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, alterations, and citations omitted).  Under the treating physician rule, a treating source's

---

[5] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations only "apply to cases filed on or after March 27, 2017."  *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c).  Because Plaintiff's claim was filed on February 17, 2015, the treating physician rule applies.

opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 416.927(c)(2).  If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight.  *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors.  *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

The ALJ in this case claimed to have given "substantial weight" to the report of Dr. Anurag Bhatia, Plaintiff's treating pain management physician.  (Tr. at 24.)  However, the ALJ disregarded certain key aspects of Dr. Bhatia's report, including Dr. Bhatia's opinion that Plaintiff was unable to concentrate and focus due to his sedating medications, as well as his opinion on Plaintiff's ability to stoop, stand, and walk.  (*See id.* at 410–11, 414.)  "[A]n ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions."  *Raymer v. Colvin*, No. 14-CV-6009 (MWP), 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (collecting cases).

Dr. Bhatia's March 28, 2018 evaluation of Plaintiff stated that "[Plaintiff] is unable to concentrate and focus d/t sedating medications [i.e.,] Tramadol [and] Tizanidine."  (Tr. at 414.)  The ALJ did not explicitly discuss this finding, however, when concluding that Plaintiff had "a moderate limitation" with regard to concentrating (*id.* at 19), and "no more than moderate mental limitations" (*id.* at 26), nor did the ALJ explain why he apparently ignored Dr. Bhatia's opinion.  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician

6

is ground for a remand." *Manfra v. Colvin*, No. 15-CV-2844 (JFB), 2016 WL 4434820, at *13 (E.D.N.Y. Aug. 22, 2016) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

The Commissioner notes that in determining his evaluation of Plaintiff's mental restrictions, the ALJ gave significant weight to the opinion of consultative examiner Dr. Haruyo Fujiwaki, who only met with Plaintiff once, that Plaintiff was "mildly to moderately limited in sustaining concentration." (Tr. at 25; Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings ("Def's Mot."), Dkt. 15, at 22 (citing Tr. at 24–25, 392).) While the ALJ was, of course, entitled to credit the opinion of Dr. Fujiwaki over that of Dr. Bhatia, *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (summary order), he was required to explain his reasons for doing so, *see, e.g.*, *Rodriguez v. Astrue*, No. 07-CV-534 (WHP) (MHD), 2009 WL 637154, at *27 (S.D.N.Y. Mar. 9, 2009); *Selian*, 708 F.3d at 419 (noting that, as a general rule, "ALJs should not rely heavily on the findings of consultative physicians after a single examination").[6] Additionally, while the Commissioner accurately notes that "treatment records, including from Dr. Bhatia, specifically show Plaintiff did not report any side effects" (Def's Mot., Dkt. 15, at 25 (citing Tr. at 270, 348, 360, 363, 372, 378)), "there is no indication that the ALJ considered [these notes] when making [his] determination[,] . . . [and a] reviewing court may not accept appellate counsel's post hoc rationalizations for agency action[7]," *Manfra*, 2016

---

[6] The Court also notes that it is not clear from Dr. Fujiwaki's evaluation whether he specifically considered the impact and side-effects of Plaintiff's medication. (*See* Tr. at 390–96.) Nor is it clear whether Dr. Fujiwaki evaluated Plaintiff's treatment records in submitting his evaluation. (*Id.*) The opinions of consultative examiners are entitled to less weight where they have not reviewed a patient's medical records. *See Gunter*, 361 F. App'x at 200.

[7] Moreover, to the extent the ALJ's discounting of Dr. Bhatia's opinion was based on the seeming inconsistencies in Dr. Bhatia's opinion highlighted *post hoc* by the Commissioner, the ALJ had an affirmative duty to seek clarification from Dr. Bhatia regarding Plaintiff's ability to concentrate. *See Braga v. Comm'r of Soc. Sec.*, No. 18-CV-1345 (PKC), 2019 WL 4083047, at *6 (E.D.N.Y. Aug. 29, 2019) ("Once the ALJ concluded that [the doctor]'s medical reports

WL 4434820, at *16 (internal quotation marks and citation omitted) (quoting, *inter alia*, *Snell*, 177 F.3d at 134). As Plaintiff posits (Pl.'s Reply, Dkt. 17, at 5), his ability to concentrate is relevant to his overall disability status, as the vocational expert at Plaintiff's hearing testified that an individual would not be able to maintain the jobs she had previously identified as suitable for Plaintiff if he were required to take many breaks (Tr. at 55). Thus, remand is appropriate so that the ALJ may properly address and solicit any additional evidence required to evaluate the implications of Dr. Bhatia's opinion regarding Plaintiff's ability to concentrate.

Similarly, the ALJ failed to note, much less explain, his disregard for Dr. Bhatia's opinion on Plaintiff's ability to stand, walk, and stoop. The ALJ found that Plaintiff could perform "light work" subject to a restriction that he switch from sitting to standing every half hour, and did not impose any other restrictions on Plaintiff's standing in his RFC determination. (*Id.* at 20.) Dr. Bhatia, however, opined that Plaintiff could only stand and walk for one hour in an eight-hour workday. (*Id.* at 410.) While the ALJ purported to give "substantial weight" to this portion of Dr. Bhatia's opinion (*id.* at 24), his RFC determination resembles instead the opinion of Dr. Aurelio Salon, a consultative physician who saw Plaintiff only once, that Plaintiff could stand and/or walk for six hours out of an eight-hour day (*id.* at 22–23, 402). Indeed, the RFC's allowance for Plaintiff to stand for up to four hours during an eight-hour day is plainly contrary to, and ignores, Dr. Bhatia's opinion. The ALJ also found that Plaintiff "has the ability to occasionally stoop" (Tr. at 20), a finding that, while consistent with Dr. Salon's opinion (*id.* at 404), is completely at odds with Dr. Bhatia's opinion that Defendant could *never* stoop (*id.* at 411). Once more, the ALJ did

---

contained deficiencies, *e.g.*, that her conclusions about Plaintiff's physical limitations were unsupported and inconsistent with her physical exam findings, the ALJ incurred an affirmative obligation to seek clarification and additional information from [the doctor] to fill any clear gaps before dismissing the doctor's opinion." (internal quotation marks and citations omitted)).

not address why he apparently adopted Dr. Salon's opinion over Dr. Bhatia's.[8]  *See Selian*, 708 F.3d at 419.

Again, "[t]he ALJ is, of course, entitled to credit the opinions of consulting physicians. However, while contradictions in the medical record are for the ALJ to resolve, they cannot be resolved arbitrarily." *Gunter*, 361 F. App'x at 200 (internal quotation marks and citations omitted) (remanding case where the ALJ "g[ave] no indication at all of why he chose to credit the opinions of the consulting physicians over that of [the treating physician]").  Here, the ALJ's failure to explain his decision not to credit the opinion of Plaintiff's treating physician supports remand. *Manfra*, 2016 WL 4434820, at *13; *see also Hardy v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 607, 615–16 (S.D.N.Y. 2020) ("[I]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." (citations omitted)).

## II.      The ALJ's Credibility Determination

"As an initial matter, the Court notes that to the extent that the ALJ, on remand, reevaluates the evidence in addressing the treating physician rule, the ALJ should also consider whether that re-evaluation alters the assessment of the plaintiff's credibility in light of the evidence as a whole." *Larsen v. Astrue*, No. 12-CV-414 (CBA), 2013 WL 3759781, at *2 (E.D.N.Y. July 15, 2013) (citation omitted).

"The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms."  *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012).  "At the first step, the ALJ must decide whether the claimant suffers

---

[8] Indeed, the Court notes that, while not discussed in the ALJ's decision, Dr. Bhatia's opinion was consistent with that of Dr. Anthony Alastra, Plaintiff's other treating physician, that Plaintiff could not "do significant bending, kneeling, stooping, climbing, reaching at or above or below shoulder level" (Tr. at 315), as well as the finding of consultative physician Dr. Emmanuel Gelin that Plaintiff "could only bend up to 30 degrees due to back pain" (*id.* at 326).

from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (alteration omitted) (quoting 20 C.F.R. § 404.1529(a)).

> The ALJ must consider statements the claimant or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts at work, or any other relevant statements [he] makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Villegas Andino v. Comm'r of Soc. Sec.*, No. 18-CV-1780 (PKC), 2019 WL 4575364, at *5 (E.D.N.Y. Sept. 19, 2019) (alterations omitted) (quoting *Genier*, 606 F.3d at 49).

"[T]he subjective element of pain is an important factor to be considered in determining disability." *Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). "Even if subjective pain is unaccompanied by positive clinical findings or other objective medical evidence, it may still serve as the basis for establishing disability." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) (citation omitted). A Plaintiff who "alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but instead medical signs and laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain." *Meadors v. Astrue*, 370 F. App'x 179, 185 (2d Cir. 2010) (summary order) (internal quotation marks, citations, and alteration omitted); *see also id.* ("A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. It does not require objective evidence of the pain itself or its degree." (internal quotation marks and citation omitted)).

The relevant regulations set out a seven-factor test to evaluate a plaintiff's own subjective statements regarding pain.[9]  *See* 20 C.F.R. § 404.1529(c)(3).  "If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Fernandez v. Astrue*, No. 11-CV-3896 (DLI), 2013 WL 1291284, at *18 (E.D.N.Y. Mar. 28, 2013) (quoting *Correale-Englehart*, 687 F. Supp. 2d at 435).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (Tr. at 21.)  The Court holds that remand is warranted, because the ALJ's determination on Plaintiff's credibility is not supported by substantial evidence.

The ALJ reasoned that Plaintiff's self-report of his daily activities indicated that he was "quite active," which the ALJ found to be inconsistent with his subjective complaints.  (*Id.* at 22.) The ALJ noted that Plaintiff takes his dogs for a walk, eats his meals, watches TV, shops, and uses the computer, including for social media.  (*Id.*)  However, the ALJ omitted other facts that qualified Plaintiff's ability to perform those daily activities, such as the fact that Plaintiff's girlfriend cooks, cleans, and does the shopping for him (*id.* at 330) and that he walks his dogs slowly and can only walk somewhere between a half-block to three blocks before stopping to rest because of pain (*id*. at 46, 245, 249).

---

[9] These are: (i) the plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; (vi) any measures the claimant uses or has used to relieve his pain or other symptoms; and (vii) other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

In addition, "[a]n individual can perform each of these daily activities and still experience debilitating pain at the intensity and persistence and with the limiting effects [he] claims." *Larsen*, 2013 WL 3759781, at *3 (citations omitted). "The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'" *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238–39 (E.D.N.Y. 2014) (internal quotation marks and citations omitted). The ALJ's discrediting of Plaintiff's statements of pain based on Plaintiff's daily activities is thus not supported by substantial evidence and warrants remand.[10] *See Archambault v. Astrue*, No. 09-CV-6363 (RJS) (MHD), 2010 WL 5829378, at *30 (S.D.N.Y. Dec. 13, 2010) ("Plaintiff's ability to engage in certain limited daily activities[, including self-care, childcare duties, a few household chores, and some pastimes,] does not provide evidence of his ability to perform sedentary work unless he can perform those daily activities at a level consistent with the demands of sedentary work." (citations omitted)), *report and recommendation adopted*, 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011); *see also Bradley v. Colvin*, 110 F. Supp. 3d 429, 446 (E.D.N.Y. 2015) (remanding and noting that "[w]hile [plaintiff] did engage in the daily activities of raising two children, driving an SUV locally, exercising periodically and performing some household duties with the help of her son, such conduct does not show that [plaintiff] is capable of performing full time light work" (internal record citation and case citation omitted)). The ALJ cannot "reject the claimant's

---

[10] Additionally, to the extent the ALJ seeks to discount Plaintiff's disability because his doctors recommended a conservative treatment regimen, that inference is not permitted. *See Burgess*, 537 F.3d at 129.

statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective evidence does not substantiate the claimant's statements." *Hudson v. Berryhill*, No. 17-CV-463 (MAT), 2018 WL 4550310, at *6 (W.D.N.Y. Sept. 21, 2018) (internal quotation marks, citation, and brackets omitted). Therefore, remand is warranted for proper consideration of Plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain. *See Pavia v. Comm'r of Soc. Sec.*, No. 10-CV-818 (GTS) (DEP), 2013 WL 5652497, at *6 (N.D.N.Y. Oct. 15, 2013) ("Both case law and the social security regulations prohibit an ALJ from discrediting a plaintiff's statements solely based upon objective medical evidence." (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) and 20 C.F.R. § 404.1529(c)(2))).

### III.    Instructions on Remand

Because the ALJ's failure to explain his choice not to credit the treating physician's opinion and the ALJ's limited credibility determination constitute sufficient error to require remand, the Court does not reach Plaintiff's remaining arguments. However, in light of the Court's findings regarding the treating physician rule and the ALJ's notation that the Plaintiff's treatment record was "minimal" (*see* Tr. at 21), the Court reminds the ALJ that he has an affirmative obligation to fully develop the administrative record. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Where the "report from claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques," the ALJ must seek additional evidence or clarification. *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)). "Thus, if a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports,

13

the ALJ must seek clarification and additional information from the physician to fill any clear gaps before dismissing the doctor's opinion." *Id.* (citations omitted).  For the reasons discussed earlier, the Court further notes that the focus of this supplemental inquiry should, at a minimum, include seeking additional evidence and/or clarification from Plaintiff's treating physicians, rather than simply resorting to, or relying on, the lone examination or record review of consultative examiners.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.   The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order.  The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 24, 2020
          Brooklyn, New York

14